TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00610-CV







The State of Texas, acting by and through the Texas


Department of Mental Health and Mental Retardation, Appellant



v.




Orena Alvina Salyer and Tott Martin Salyer, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 93-02598, HONORABLE F. SCOTT McCOWN, JUDGE PRESIDING







PER CURIAM


 Appellant the State of Texas, acting by and through the Texas Department of
Mental Health and Mental Retardation, challenges the decree rendered in the divorce of Orena
Alvina Salyer and Tott Martin Salyer. Tott Salyer, an eighty-four-year-old incompetent, resides
at Kerrville State Hospital and was represented in the divorce proceeding by Cecil Joe Salyer, Tott
Salyer's son, guardian ad litem, and guardian of his person and his estate. The State intervened
in the divorce proceeding as a creditor of the community estate for reimbursement for the care and
treatment given Tott Salyer during the previous thirteen months. The primary community asset
is a 239-acre plot in Hays County. The trial court granted a divorce in favor of Orena Salyer on
the grounds of cruelty and abandonment. The trial court awarded each party the personal property
in his or her possession, awarded Orena Salyer the Hays County property, and awarded Tott
Salyer the debt owed the Texas Department of Mental Health and Mental Retardation. Although
the trial court awarded the State a judgment solely against Tott Salyer for its claim of $99,407.40,
it also ordered that Orena Salyer sell within six months a portion of the 239-acre plot sufficient
to satisfy the debt to the State. We will affirm the trial court's judgment.



The Appointment of an "Attorney Ad Litem"

 The State, in its first point of error, complains that the trial court abused its
discretion in failing to appoint an "attorney ad litem" to represent the interest of Tott Salyer
because a conflict of interest existed between him and his guardian, Cecil Salyer. The State cites
no authority that permits or requires the appointment of an attorney ad litem in this case. The
State does cite Texas Rule of Civil Procedure 173 and cases thereunder, which provide that the
court must appoint a guardian ad litem when a ward is represented by guardian who appears to
the court to have an adverse interest. Accordingly, we analyze this point of error as if the State
had requested a substitute guardian ad litem. See Sheehan v. Southern Pac. Co., 422 S.W.2d
948, 949 (Tex. Civ. App.--Houston [1st Dist.] 1967, writ ref'd n.r.e.) (improper designation of
guardian ad item as attorney ad litem not material). The State's complaint is that the guardian was
influenced by his affection for his step-mother to consider her interests rather than his ward's
interest, and that the conflict manifested itself when the guardian agreed to a disproportionate
division of property. 

 Cecil Salyer testified that he believed that Orena Salyer was entitled to a greater
proportion of the property in consideration of Tott Salyer's abuse of her during their marriage and
because she had paid most of the purchase price for the property. Also, Cecil Salyer knew that
Tott Salyer would continue to receive the same level of care regardless of the amount of property
awarded to him. The State's obligation to care for Tott Salyer, should he continue to need care,
will not terminate when his funds are gone. See Tex. Health & Safety Code Ann. § 552.013(a)
(West 1992) ("A person may not be denied services under this subtitle because of an inability to
pay for the services."). On these facts, it appears that Cecil Salyer's conflict of interest, if any,
is with the State rather than with Tott Salyer. 

 Rule 173 contemplates the appointment of a guardian ad litem only if there is a
conflict of interest between the guardian and ward. Davenport v. Garcia, 834 S.W.2d 4, 24 (Tex.
1992) (sole circumstance in which a guardian ad litem can be appointed is when person to whom
Rule 173 applies is represented by next friend or guardian who appears to have an interest adverse
to that person); English v. Gregory, 714 S.W.2d 443, 447 (Tex. App.--Houston [14th Dist.] 1986,
no writ) (court had no authority to appoint guardian ad litem for divorce proceeding because son's
interest was not adverse to father's). The determination of the existence of a conflict of interest
is within the trial court's discretion. Texas Employers Ins. Corp. v. Keenom, 716 S.W.2d 59, 67
(Tex. App.--Houston [1st Dist.] 1986, writ ref'd n.r.e.). The trial court's decision regarding the
appointment of a guardian ad litem will not be overturned unless it abused its discretion. Id. A
trial court abuses its discretion only when it acts without regard for any guiding rules or
principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). Since
the trial court did not find a conflict, and the record does not reflect one, we find no abuse of
discretion. We overrule point of error one. 

 Point of error two complains that Tott Salyer was denied due process by the court's
failure to appoint an attorney ad litem to represent him in the proceedings when the guardian's
interest was clearly adverse to the ward's. Because we have already determined that Cecil
Salyer's interest was not adverse to Tott Salyer's, we overrule point of error two.



Judgment Against Tott Salyer Only

 Point of error three complains that the trial court erred in concluding that the State
was entitled to a judgment only against Tott Salyer when the debt incurred was for necessaries. 
An individual is personally liable for the debt incurred by his or her spouse for necessaries. See
Tex. Fam. Code Ann. § 4.031 (West 1993). (1) Additionally, an individual is liable for the support
of an institutionalized spouse. See Tex. Health & Safety Code Ann. § 552.013(c),(d) (West
1992); Finney v. State of Texas, 308 S.W.2d 142, 144 (Tex. Civ. App.--Austin 1958, writ ref'd
n.r.e.) (wife is liable even to separate estate). However, if the court erred by awarding judgment
only against Tott Salyer, that error is harmless because the trial court also ordered Orena Salyer
to sell community property to pay the State's claim. Tex. R. App. P. 81; City of Galveston v.
Hill, 246 S.W.2d 860, 863 (Tex. 1952)(burden on appellant to prove harm). The trial court gave
Orena Salyer six months to sell the property, with an option to return to court to request additional
time. The State may sue under Texas Family Code section 3.70 to enforce its rights against the
property. See Tex. Fam. Code Ann. § 3.70 (West 1993). 

 The State argues that its rights were prejudiced because, had it been awarded a
judgment against Orena Salyer, it would have been entitled to the remedy of execution under
Texas Rule of Civil Procedure 627 and would have been able to force a sale of the property to
satisfy the debt thirty days after the judgment was entered. A forced sale is a fire sale. "It is
common knowledge that property disposed of at a forced sale rarely brings its highest value." 
Maddox v. Maddox, 489 S.W.2d 391, 393 (Tex. Civ. App.--Houston [1st Dist.] 1973, no writ). 
The statement of facts indicates that the trial court chose its remedy because it was concerned
about preserving the value of the community estate. It is not an abuse of discretion to attempt to
preserve the value of the community estate. Also, the trial court provided for the payment of
interest from the time judgment was rendered until the land is sold, which compensates the State
for any delay in payment. Finding no harm, we overrule point of error three.

 Point of error four additionally complains that the State was entitled to judgment
against Orena Salyer because she did not file a sworn denial to the State's suit on a sworn account. 
In the absence of a sworn denial, the State was entitled to a judgment for the amount of its sworn
account. See Tex. R. Civ. P. 185; Tex. Health & Safety Code Ann. § 552.019(c) (West 1992);
State v. Crawford, 771 S.W.2d 624, 627-628 (Tex. App.--Dallas 1989, writ denied). Once again,
we hold that any error is harmless because the State's claim will be paid in full when Orena Salyer
sells the community property, as ordered by the court.

 The situation in this case is fundamentally different from the situation in Broadway
Drug Store v. Trowbridge, 435 S.W.2d 268 (Tex. Civ. App.--Houston [14th Dist.] 1968, no writ),
in which the trial court awarded the intervening creditor a judgment only against the husband, and
effectively relieved the wife from responsibility for a community debt. Because the intervening
creditor was barred from any relief against the wife, (2) who was jointly liable for the community
debt, the court of appeals held that the trial court had abused its discretion. In this case, the trial
court actually gave the State a judgment to be satisfied from the sale of community property. We
overrule point of error four.



Disproportionate Distribution of Property


 Point of error five claims that the trial court abused its discretion in awarding Orena
Salyer all the valuable community property and Tott Salyer all the debt for necessaries. The State
seeks to protect its right to be reimbursed for both accrued and prospective costs. Although the
State has standing to intervene to protect its right to reimbursement under Texas Health and Safety
Code section 552.013, (3) the State has no standing to protest the property settlement to protect its
right to future reimbursement for costs which may be incurred prospectively. Tott Salyer may
stay in Kerrville State Hospital for several more years, or tomorrow he may die or be transferred
to another, less costly facility. The future costs to the State are speculative and the State has no
standing, as a potential creditor, to raise them in this divorce proceeding.

 With regard to the accrued costs, once again, the State proves no harm since it was
awarded a judgment for the full amount of its claim plus interest from the time of judgment. We
fail to see how the State has grounds to complain under these circumstances.

 Further, when we examine the distribution, we find no abuse of discretion. Texas
Family Code section 3.63 provides that the trial court shall order a "just and right" division of the
community estate. (4) The trial court exercises great discretion in dividing the property. Cockerham
v. Cockerham, 527 S.W.2d 162, 173 (Tex. 1975). The trial court's division is presumed correct,
and the burden is on the State to show by record that there was no rational basis for the division
by showing that the division was manifestly so disproportionate as to constitute an abuse of
judicial discretion. Dorfman v. Dorfman, 457 S.W.2d 417, 422 (Tex. Civ. App.--Texarkana 1970,
no writ). In exercising its discretion, the trial court may consider such factors as the spouses'
capacities and abilities, benefits which the party not at fault would have derived from continuation
of the marriage, business opportunities, education, relative physical conditions, relative financial
condition and obligations, disparity of ages, size of separate estates, the nature of the property,
and fault in the breakup of the marriage. Murff v. Murff, 615 S.W.2d 696, 698-99 (Tex. 1981). (5)

 In this case, factors supporting a disproportionate distribution include the physical
abuse Orena Salyer suffered while she lived with Tott Salyer, (6) and the continuing psychological
abuse caused by Tott Salyer's threats of physical harm if she attempted to divorce him. Also, Tott
Salyer did not pay child support to Orena Salyer, although their son was sixteen years old when
he and his mother left the farm. Orena Salyer further testified that Tott Salyer quit working at
some point in their marriage and most of the payments on the farm were made from her earnings. 


 The State complains that the trial court abused its discretion by basing its
disproportionate division of the property on cruel acts committed by Tott Salyer in 1971, claiming
that the statute of limitations applies to the considerations involved in the distribution of property. 
The State cites no cases supporting this proposition, nor do we find any. Also, the affirmative
defense of limitations was not pled and so is waived. Tex. R. Civ. P. 94; Keel v. Hoggard, 590
S.W.2d 939, 945 (Tex. Civ. App.--Waco 1979, no writ). Finally, since the judge found and the
evidence supports a finding of continuing cruelty, (7) the statute of limitations is tolled. Twyman v.
Twyman, 790 S.W.2d 819, 820 (Tex. App.--Austin 1990), rev'd on other grounds, 855 S.W.2d
619 (Tex. 1993).

 The State complains that the trial court cannot prejudice an intervening creditor's
rights by awarding the assets to Orena Salyer and the debt to Tott Salyer, citing Broadway Drug
Store, 435 S.W.2d at 268. Broadway Drug Store, which addresses whether a judgment in favor
of a creditor may be had against both parties to a divorce regardless of the distribution of the
property or debt, does not restrict a trial court's discretion to divide the property. In fact, the
court in Broadway Drug Store specifically stated that "the court had discretion in dividing the
property between [the spouses] to provide that the [husband] should pay intervenor's debt." Id.
at 270. What the trial court did not have the power to do, according to the Broadway Drug Store
court, was to award the intervenor a judgment against the husband only when that eliminated the
creditor's recourse against the wife. And, as discussed above, we distinguish Broadway Drug
Store on the ground that the judgment rendered in this case protects the State's rights against
Orena Salyer.

 The State emphasizes that Orena Salyer is able to work part-time while Tott Salyer
is totally incapacitated. However, since Orena Salyer is seventy-nine years old, her continued
ability to hold a part-time job cannot be assumed. Finally, the State complains that Orena Salyer
has not paid taxes and upkeep on the property since she left it in 1971. Even if true, (8) it is also
true that Orena Salyer was wrongfully excluded from the community property, in violation of her
right to occupy it. The trial court could have rationally concluded that the wrongful exclusion
offset any lack of contribution. We find no abuse of discretion on these facts and overrule point
of error five.



CONCLUSION


 We affirm the trial court's judgment.


Before Justices Powers, Kidd and B. A. Smith

Affirmed

Filed: May 24, 1995

Do Not Publish

1.   Texas Family Code section 4.031 provides: 


(a) A person is personally liable for the acts of the person's spouse only if:


 . . .


 (2) the spouse incurs a debt for necessaries under Section 4.02 of this
code.


Tex. Fam. Code Ann. § 4.031 (West 1993).

 

Texas Family Code section 4.02 provides:


Each spouse has the duty to support the other spouse. . . . A spouse . . . who
fails to discharge the duty of support is liable to any person who provides
necessaries to those to whom support is owned.


Tex. Fam. Code Ann. § 4.02 (West 1993).


 "Necessaries" include food, clothing, shelter and medical attention. Woodruff v.
Woodruff, 487 S.W.2d 791, 793 (Tex. Civ. App.--Texarkana 1972, no writ). Therefore, the
services the State provided are necessaries for which Orena is individually liable.
2.   Generally, a divorce decree will not impact the rights of creditors. The creditor can
simply file suit to recover for a community debt from either former spouse, regardless of
to whom the debt was awarded. See Rush v. Montgomery Ward, 757 S.W. 2d 521, 522-23
(Tex. App.--Houston [14th Dist.] 1988); Villarreal v. Laredo Nat'l Bank, 677 S.W.2d 600,
607 (Tex. App.--San Antonio 1984, writ ref'd n.r.e); Anderson v. Royce, 624 S.W.2d 621, 623
(Tex. App.--Houston [14th Dist.] 1981, writ ref'd n.r.e.). However, since the creditor in
Broadway Drug Store had intervened in the divorce proceeding, it was bound by the judgment
and could not have sued the spouse. Carter v. Leiter, 476 S.W.2d 461, 462 (Tex. Civ.
App.--Dallas 1972, writ ref'd n.r.e.). 
3.   Texas Health & Safety Code section 552.013 provides, "The State is entitled to
reimbursement for the support, maintenance, and treatment of a nonindigent patient." 
Tex. Health & Safety Code Ann. § 552.013(c) (West 1992). The State's right to
reimbursement for the maintenance and treatment of patients in a state hospital exists
only by statute. See State v. Rubion, 308 S.W.2d 4, 6 (Tex. 1957); State v. Morris, 303
S.W.2d 802, 803 (Tex. Civ. App.--Eastland 1957, writ ref'd).
4.   Relevant portions of section 3.63 provide:


(1) In a decree of divorce or annulment the court shall order a division of
the estate of the parties in a manner that the court deems just and right,
having due regard for the rights of each party and any children of the
marriage.


Tex. Fam. Code Ann. § 3.63 (West 1993).
5.   A vastly disproportionate distribution may be appropriate if circumstances warrant. 
See Oliver v. Oliver, 741 S.W.2d 225, 228 (Tex. Civ. App.--Fort Worth 1987, no writ)
(eighty-twenty split justified by husband's fault and relatively greater income); Thomas v.
Thomas, 603 S.W.2d 356 (Tex. Civ. App.--Houston [14th Dist.] 1980, writ dismissed)
(seventy-thirty split not abuse of discretion considering parties comparative age, earning
capability, education, probable needs for future support, and facts that lead to divorce); Knight
v. Knight, 502 S.W.2d 840, 849 (Tex. Civ. App.--San Antonio 1973, writ dismissed) (award
of almost all net assets to wife and all debt to husband justified under the circumstances);
Dorfman v. Dorfman, 457 S.W.2d at 419-20 (three-fourths to one-fourth split upheld when
trial court also set aside money as wife's separate property).
6.   Tott Salyer had been abusive towards Orena Salyer during the twenty-four years
they lived together. Orena Salyer left home in 1971 after she was badly beaten. She
described the incident:


I came home from work and he had been drinking and he started after me,
and I started down the road to get away from him and he caught me down
the hill and made me walk all the way up to the house and was kicking me in
my back. We got to the house, he throwed me down in the backyard and
started choking me and knocked all my teeth out, broke my wrists, broke my
chest bone.


Orena Salyer was hospitalized for her injuries.
7.   The court found that Tott Salyer, even after the parties were separated, "continued
to threaten to kill or otherwise harm" Orena Salyer, and that she was in constant fear of
him. 
8.   Orena testified that she did not remember whether she had contributed to the
upkeep and the payment of taxes.